## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Michael Romeo, being duly sworn, do depose and state that:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). I have been employed as a Special Agent for approximately three years. I am presently assigned to Boston II Field Office, a group of Special Agents who investigate violations of laws related to firearms trafficking, possession of firearms by prohibited persons, and the use of firearms in furtherance of drug trafficking crimes, in and around the City of Boston, Massachusetts. I have conducted numerous investigations relating to violations of state and federal firearms and narcotics laws. I have received training in investigations related to firearms and narcotics trafficking at the Criminal Investigator Training Program at the Federal Law Enforcement Training Center ("FLETC") located in Glynco, Georgia. In particular, I received training regarding firearms, the execution of search and arrest warrants, and other investigative techniques. I also received legal instruction which covered Fourth Amendment searches and seizures. Subsequently, I attended specialized training known as Special Agent Basic Training at FLETC, where I received instruction in firearms technology and identification, firearms & narcotics trafficking, alcohol & tobacco diversion, explosives, and arson. During my career as a Special Agent, I have participated in the execution of numerous arrest warrants and search warrants.

2. Based on my training and experience, I am familiar with federal firearms laws and know that it is a violation of Title 18, United States Code, Section 922(g)(1) for a person previously convicted in a court of a crime punishable by imprisonment for a term exceeding one year to possess a firearm or ammunition which had previously traveled in interstate or foreign commerce.

3.  I submit this affidavit in support of a criminal complaint charging Jermaine FENTON (DOB: xx/xx/1978) with a violation of Title 18, United States Code, Section 922(g)(1), unlawful possession of a firearm and ammunition, to wit: a GLOCK, model 36, .45 caliber handgun (the "GLOCK firearm") and two rounds of .45 caliber ammunition, which had previously traveled in interstate or foreign commerce by a person previously convicted in a court of a crime punishable by imprisonment for a term exceeding one year.

4.  The facts herein are based on a review of reports written by law enforcement officers during this investigation and my conversations with them. In submitting this affidavit, I have not included every fact known to me regarding this investigation. Instead, I have included only those facts that I believe are sufficient to establish probable cause.

## Investigation

5.  On June 2, 2018, at approximately 9:01 p.m., Boston Police Officers Cahill and Cavanaugh responded to a radio call for a person with a gun at 70 Bloomfield Street # 3, Dorchester, Massachusetts.

6.  Upon arrival, officers spoke with Mark Alfred, who stated he was involved in a physical altercation with his niece's (Nadira Amoroso) boyfriend (FENTON). Alfred, who lived in the first floor apartment of the three family dwelling with his girlfriend Michelle Dixon, stated he went to his niece's apartment on an upper floor of the dwelling after Dixon heard an argument on that floor. Upon arrival at his niece's apartment, he observed FENTON grab Amoroso by the shirt and hit her in the face.

7.  Alfred stated he separated FENTON from Amoroso and then FENTON stated "you just signed your death warrant." Alfred stated FENTON then reached for an object under the bed at the same time he heard Amoroso yell "he's getting a weapon." Alfred stated he then

grabbed FENTON while Dixon took possession of the firearm from under the bed and ran downstairs to her apartment while FENTON gave chase yelling "you just signed your death warrant." FENTON ultimately fled from the residence in the direction of Geneva Avenue.

8. Officers took possession of the firearm, which was determined to be a Glock model 36, .45 caliber pistol and two round of .45 caliber ammunition.

9. Approximately fifty minutes after the original 9-1-1 call, officers were called back to the residence by Dixon. Dixon stated FENTON returned to the residence and was hiding in the back yard. Officers searched the back yard and found FENTON hiding in the grass at the rear of the residence.

10. FENTON was arrested and transported to a police station. During "booking", FENTON gestured with his hand as if he was holding a firearm and stated "pop, pop."

11. ATF Special Agent Mattheu Kelsch, who has been allowed to testify in court as an interstate nexus expert, confirmed the firearm was not manufactured in Massachusetts. Special Agent Kelsch also confirmed the two .45 caliber rounds were not manufactured in Massachusetts.

12. I am familiar with FENTON's criminal history and know that on June 4, 2010, he was convicted in the United States District Court for the District of Massachusetts on one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1), and was sentenced to be imprisoned for 57 months.

## Conclusion

13.  Based on the foregoing facts, there is probable cause to believe that on June 2, 2018, Jermaine FENTON, in Boston, within the District of Massachusetts, did possess, subsequent to a conviction of a crime punishable by imprisonment for a term exceeding one year, a firearm and ammunition which had previously been shipped or transported in interstate or foreign commerce, in violation of 18 U.S.C. § 922(g)(1).

_____
Michael Romeo
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn and subscribed to me this 12th day of July, 2018.

_____
Honorable Marianne B. Bowler
United State Magistrate Judge